**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
━━━━━━━━━━━━━━━━━━━━━━━━━━━

SAYVION D. BLOUNT,

                         Plaintiff,                9:21-CV-147
       v.                                     (DNH/CFH)

MARK RASTANI, et al.,

                         Defendants.

━━━━━━━━━━━━━━━━━━━━━━━━━━━

| | |
|---|---|
| **APPEARANCES:** | **OF COUNSEL:** |
| Sayvion D. Blount | |
| Rescue Mission – Kiesewetter | |
| 122 Dickerson Street | |
| Syracuse, New York 13202 | |
| Plaintiff pro se | |
| | OLIVIA R. COX, ESQ. |
| Attorney General for the | Assistant Attorney General |
| State of New York | |
| The Capitol | |
| Albany, New York 12224 | |
| Attorney for defendants | |

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

      Plaintiff pro se Sayvion Blount ("plaintiff"), who was at all relevant times in the

custody of the New York State Department of Corrections and Community Supervision

("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983.  Plaintiff alleges that

defendants Correctional Officers Mark Rastani ("Rastani") and Zachary Burke ("Burke"),

---

[1] This matter was referred to the undersigned for Report-Recommendation and Order pursuant to 28 U.S.C. § 636(b) and N.D.N.Y. L.R. 72.3(c).

and Registered Nurse Joseph[2] Brown ("Brown") violated his constitutional rights under the Eighth Amendment. <u>See</u> Dkt. No. 1. ("Compl."). Presently pending before the Court is Brown's motion for partial summary judgment pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 56. <u>See</u> Dkt. No. 69. Plaintiff has not responded. For the following reasons, it is recommended that Brown's motion be granted.

## I. Failure to Respond

Local Rule 56.1(a) states that "[a]ny motion for summary judgment shall contain a separate Statement of Material Facts. The Statement of Material Facts shall set forth, in numbered paragraphs, a short and concise statement of each material fact about which the moving party contends there exists no genuine issue." N.D.N.Y. L.R. 56.1(a). Local Rule 56.1(b) requires the non-moving party to file a response to the movant's Statement of Material Facts, "admitting and/or denying each of the movant's assertions in a short and concise statement, in matching numbered paragraphs." N.D.N.Y. L.R. 56.1(b). "The Court may deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert." <u>Id.</u> (emphasis omitted). Under Local Rule 7.1,

> [w]here a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers as this Rule requires shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause is shown.

N.D.N.Y. L.R. 7.1(a)(3).

---

[2] In plaintiff's complaint, he spelled Brown's first name as "Joeseph." Compl. at 1, 3. In his declaration, Brown spells his first name as "Joseph." Dkt. No. 69-2 at 1.

In support of his motion, Brown filed a Statement of Material Facts. <u>See</u> <u>generally</u> Dkt. No. 69-1. Plaintiff has not responded to Brown's motion. As such, the Court may deem admitted any properly supported facts set forth in Brown's Statement of Material Facts. <u>See</u> N.D.N.Y. L.R. 56(b).[3]

However, a non-movant's failure to respond to a motion does not "mean the motion is to be granted automatically. Such a motion may properly be granted only if the facts as to which there is no genuine dispute 'show that the moving party is entitled to a judgment as a matter of law.'" <u>Champion v. Artuz</u>, 76 F.3d 483, 486 (2d Cir. 1996) (quoting FED. R. CIV. P. 56(C)). The "[C]ourt is not required to consider what the parties fail to point out . . ., [but] it may in its discretion opt to conduct an assiduous review of the entire record even where one of the parties has failed to file [] a statement" as required by the Local Rules. <u>Holtz v. Rockefeller & Co., Inc.</u>, 258 F.3d 62, 73 (2d Cir. 2001) (citation and quotation marks omitted). In deference to plaintiff's <u>pro se</u> status, the Court will review the entire record when evaluating Brown's motion. <u>See</u> <u>Perry v. Rupert</u>, No. 9:10-CV-01033 (LEK/TWD), 2016 WL 11478229, at *4-5 (N.D.N.Y. Apr. 19, 2016), <u>report and recommendation adopted sub nom. Perry v. Ogdensburg Corr. Facility</u>, 2016 WL 3004658 (N.D.N.Y. May 24, 2016).[4]

"In the event the district court chooses to conduct such an independent review of the record, any verified complaint filed by the plaintiff should be treated as an affidavit."

---

[3] Brown and the Court sent plaintiff a notice of the consequences for failing to respond to Brown's motion. <u>See</u> Dkt. No. 69-1 at 3; Dkt. No. 70. The Court's notice was returned as undeliverable. <u>See</u> Dkt. No. 71. Plaintiff's last communication with the Court was on June 17, 2022, when he filed a letter indicating a change in his address. <u>See</u> Dkt. No. 63. Since then, all mail has been returned as undeliverable. <u>See</u> Dkt. Nos. 66, 68, 71.

[4] All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff. However, in light of the number of unpublished cases that have been cited, the Court will not provide plaintiff with copies of the cases that adopt cited Report-Recommendations and Orders.

Jackson v. Onondaga Cnty., 549 F. Supp. 2d 204, 210 (N.D.N.Y. 2008) (footnote omitted).  Plaintiff's complaint is verified and will be considered as an affidavit to the extent it is based on his personal knowledge.  See Compl. at 26.[5]  "[T]o be sufficient to create a factual issue for purposes of a summary judgment motion, an affidavit must, among other things, not be conclusory."  Id. (footnote omitted).  Moreover,

> [e]ven if a verified complaint is deemed nonconclusory, "it may be insufficient to create a factual issue where it is (1) largely unsubstantiated by any other direct evidence and (2) so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in the complaint."

Berkley v. Ware, No. 9:16-CV-1326 (LEK/CFH), 2018 WL 3736791, at *3 (N.D.N.Y July 6, 2018) (quoting Jackson, 549 F. Supp. 2d at 210), report-recommendation and order adopted, 2018 WL 3730173 (N.D.N.Y. Aug. 6, 2018).  Further,

> [w]hile it is undoubtedly the duty of district courts not to weigh the credibility of the parties at the summary judgment stage, in the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether "the jury could reasonably find for the plaintiff" and thus whether there are any "genuine" issues of material fact, without making some assessment of the plaintiff's account.

Jeffreys v. City of N.Y., 426 F.3d 549, 554 (2d Cir. 2005) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

---

[5] Citations to the parties' filings are to the pagination generated by CM/ECF in the header of each page.

## II. Factual Background

On review of Brown's motion for partial summary judgment, the facts will be related herein in the light most favorable to plaintiff as the non-moving party.  See Rattner v. Netburn, 930 F.2d 204, 209 (2d Cir. 1991) ("In assessing the record . . . to determine whether there is a genuine issue as to any material fact, the court is required to resolve all ambiguities and draw all factual inferences in favor of the party against whom summary judgment is sought.").

### A. Plaintiff's Version of the Facts[6]

Plaintiff alleges that he was transferred to Mid-State Correctional Facility ("Mid-State C.F.") on August 31, 2020.  See Compl. at 15.  When he walked up the stairwell to his new housing unit, he saw defendants Rastani and Burke.  See id. at 16.  Rastani told plaintiff to drop his belongings, place his hands on the wall, and spread his legs and feet.  See id. at 16.  Rastani asked plaintiff, "did you just f***ing get here?"  Id.  Plaintiff replied that he had just arrived at Mid-State C.F. and hoped he was not already in trouble.  See id.  Rastani said, "this f***ing a**hole," and "grabbed [plaintiff] forcefully by the hair on [his] head and pulled [his] head back and yelled in [his] ear[.]"  Id.  Rastani continued to yell at plaintiff while he punched plaintiff in the head and face "approximately 6 or 7 times[.]"  Id.  Rastani pulled plaintiff back by the hair and plaintiff fell to the ground.  See id. at 17; Dkt. No. 69-3 at 41, lines 2-10.  Rastani got on top of plaintiff and began to "repeatedly punch [him] in [his] head, face[,] and torso," approximately fifteen times.  Compl. at 17; Dkt. No. 69-3 at 43, lines 2-11.  While

---

[6] The undersigned relays plaintiff's allegations and testimony only to the extent they are relevant to Brown's motion for partial summary judgment.

punching plaintiff with his left hand, Rastani spit in plaintiff's face, and attempted to choke plaintiff with his right hand.  See Compl. at 17.

Once plaintiff was on the ground, Burke "repeatedly kick[ed plaintiff] in [his] ribs and torso and legs[.]"  Compl. at 17; Dkt. No. 69-3 at 46, lines 13-18.  Burke also punched plaintiff in the head and face, spit in his face, and pepper sprayed him.  See Compl. at 17.  The pepper spray got into Rastani's eyes which "caused C.O. Rastani to stop hitting [plaintiff], but then enraged even more[,] C.O. Rastani continued to hit [plaintiff] in the face."  Id.; Dkt. No. 69-3 at 51, lines 4-15. Rastani handcuffed plaintiff and Rastani and Burke then "continued once again their assault on" plaintiff.  Compl. at 18.  The officers called for "Sgt. Short," who responded with additional officers to the scene.  See id.

The responding correctional officers picked plaintiff up and dragged him down the stairwell.  See Compl. at 18.  Plaintiff was placed in a transport van with three or four officers and taken to the medical building.  See id.; Dkt. No. 69-3 at 57, line 7. While in the van, the officers punched plaintiff in the back of his head and sides of his face.  See Compl. at 18.

After arriving at the medical building, plaintiff was placed in a chair for ten to fifteen minutes, then brought to a different room where he waited five to ten minutes, and was then taken "into another room where [he] stood there injured, screaming in pain for medical attention because [he] was so injured from being beat up and [he] could barely move and [he] could barely talk . . . [a]nd [he] could barely see."  Dkt. No. 69-3 at 58, lines 7-25; 59, lines 1-7; see Compl. at 18.  Plaintiff was "bleeding on [his] head, on [his] eyes.  Back of [his] head."  Dkt. No. 69-3 at 61, lines 18-20.  His tooth

went through his bottom lip, his jaw was swollen, he had gashes and abrasions on his face, and his eyes were burning and irritated.  See id. at 60, lines 21-23; 61, lines 24-25; 62, lines 2-24.  He suffered "torn ligaments or . . . cartilage damage" in his right shoulder.  Id. at 63, lines 9-10.  He also suffered several "cuts and bruises and like swelling, stuff like that."  Id., lines 20-23.  Plaintiff's right arm was immobilized because of the shoulder injury, and he suffered right thumb and left wrist sprains.  See id. at 64, lines 2-13; Compl. at 20.  He had bruising on his torso and his "shin had like a dent in it.  Like a dent form being kicked from [a] boot like."  Dkt. No. 69-3 at 64, lines 16-20; Compl. at 20.

Plaintiff contends that he was "refused any medical attention," and "explicitly denied" and "intentionally refused" medical care.  See Compl. at 18-19; Dkt. No. 69-3 at 83, lines 6-10.  He testified that he was "decontaminated" from the pepper spray and that "they put bacitracin on [his] wrist where the handcuffs cut [him] . . . ."  Dkt. No. 69-3 at 67, lines 20-23.

Plaintiff removed his clothes for the medical evaluation and Brown laughed and stated, "well his back looks fine."  Dkt. No. 69-3 at 66, lines 10-25, 67, lines 1-9; Compl. at 19.  Plaintiff testified that anyone could "visibly see that [he] was beat up," and that Brown "seen [sic] that and he didn't do anything about that."  Dkt. No. 69-3 at 67, lines 10-14.  Brown told him to "shut up," and replied "no" to plaintiff's requests for medical attention.  Id. at 74, lines 24-25; 75, lines 2-3; Compl. at 19.  Plaintiff waited thirty to forty-five minutes to have the pepper spray washed out of his eyes after arriving at the medical building.  See Compl. at 18; see also Dkt. No. 69-3 at 60, lines 8-9.  Plaintiff

asked Brown for "more medical attention for [his] injuries." Dkt. No. 69-3 at 72, lines 18-19. Plaintiff testified that he saw "Brown multiple times." Id. at 83, line 12.

Plaintiff was then brought to the Special Housing Unit ("SHU") after leaving the medical building and he was issued a misbehavior report. See Compl. at 19. Plaintiff was held in the SHU for approximately two months and, while there, he was "assaulted on two separate occasions. . . ." Id. at 20. The assaults occurred on September 1, and 14, 2020. See id. at 21-22. Plaintiff "was so distraught and distressed that due to the treatment [he had] been receiving by the employees of the D.O.C.C.S. of N.Y.S. . . . [he] attempted suicide[.]" Compl. at 21. He "was scared and driven to suicide because no one was supervising the actions of these correctional officers against [him] in the S.H.U." Id.; see also Dkt. No. 69-3 at 83, lines 16-20. Plaintiff filed a grievance pertaining to the use of force incident with Rastani and Burke to the Inmate Grievance Resolution Committee, which was received on September 17, 2020. See Compl. at 23. Plaintiff alleges that the prison did not respond to his grievance.[7] See id.

### B. Brown's Version of the Facts

Brown's version of events differs dramatically from plaintiff's allegations and testimony. According to Rastani's inmate misbehavior report, plaintiff came up the stairs to his new housing unit at 2:50pm and the officers requested to see his identification. See Dkt. No. 69-3 at 4. Plaintiff asked why, Rastani ordered him to produce his identification, and plaintiff refused. See id. Rastani ordered plaintiff to a "pat frisk position" to which plaintiff responded, with "what the f***," but complied. Id. Plaintiff then "came off the wall and hit" Rastani in the "left jaw area and neck area." Id.

---

[7] Plaintiff has not provided a copy of this grievance, nor has Brown provided a copy of plaintiff's grievance history.

Rastani punched plaintiff's chest "with [his] left hand and then with [his] right hand used [his] pepper spray" on plaintiff.  Id.  Plaintiff was "escorted to [the medical building] without incident."  Id.

Brown examined plaintiff after the use of force incident.  See Dkt. No. 69-2 at 2, ¶ 10; 7; Dkt. No. 69-1 at 2, ¶ 8.  Brown originally recorded the time of his examination as "1540PM."  Dkt. No. 69-2 at 7.  He crossed out the time, wrote "3:05 p.m.," and initialed the change.  Id.  Brown declares that the "1540p" time stamp erroneously reflected the time the paperwork was completed, and he changed it to reflect when plaintiff was examined.  Id. at 2, ¶ 18.  Plaintiff's ambulatory health record, which was prepared by Brown, lists "Time" as "1540p."  Id. at 9.  Brown declares that he completed the health record at 3:40pm.  See id. at 2, ¶ 16.  During the examination, Brown noted red eyes and a quarter inch abrasion on plaintiff's left wrist.  See Dkt. No 69-1 at 2, ¶ 9; Dkt. No. 69-2 at 2, ¶ 11.  Brown noted no other injuries.  See Dkt. No. 69-1 at 2, at ¶ 10.  Brown determined that plaintiff's wrist abrasion was a closed wound, and it required no additional care.  See Dkt. No. 69-2 at 2, ¶ 14; Dkt. No. 69-1 at 2, ¶¶ 12-13.  Brown rinsed the pepper spray out of plaintiff's eyes.  See Dkt. No. 69-1 at 2, ¶ 11; Dkt. No. 69-2 at 2, ¶ 13.  A use of force report record indicates that plaintiff was seen by J. Gallogy, R.N., on August 31, 2020, at 3:05pm.  See Dkt. No. 69-2 at 6; 2, ¶ 10.  Nurse Gallogy noted that plaintiff had red eyes and a "1/4 inch abrasion to the lf. wrist.  No other injuries noted.  O.C. Decontaminat [sic] performed."  Id. at 6.

The following day, on September 1, 2020, Brown examined plaintiff, completed a body check, and wrote, "no new injuries noted."  Dkt. No. 69-2 at 9.  Plaintiff was examined on September 2, 2020, at 5:50pm, by a different medical provider because he

was "suicidal." Dkt. No. 69-3 at 6. Plaintiff claimed he was "being assaulted by staff" and "had multiple bruises + injuries." Id. The medical provider wrote, "none observed." Id. Plaintiff was seen by another medical provider later that same day, and "no injuries noted[.] Still has area on left wrist from pervious encounter, but no new injuries." Id.

## II. Discussion

### A. Summary Judgment Standard

Under Fed. R. Civ. P. 56(a), summary judgment may be granted only if all the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (citation omitted); see FED. R. CIV. P. 56(a); see also Anderson, 477 U.S. at 247. The moving party has the burden of showing the absence of a genuine dispute of material fact by citing to "the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]" FED. R. CIV. P. 56(c)(1)(A). A fact is material if it "might affect the outcome of the suit," as determined by the governing substantive law; a "dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

If the moving party meets this burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 251 (citation omitted); see Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009). "When ruling

on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003). Still, the nonmoving party cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986) (citing Quarles v. Gen. Motors Corp., 758 F.2d 839, 840 (2d Cir. 1985) (per curiam)); see also Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted) ("[M]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist.").

Where, as here, a party seeks judgment against a pro se litigant, the Court must afford the non-movant special solicitude. See Treistman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006). As the Second Circuit explained,

> [t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," that a pro se litigant's submissions must be construed "liberally," and that such submissions must be read to raise the strongest arguments that they "suggest[.]" At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, or arguments that the submissions themselves do not "suggest," that we should not "excuse frivolous or vexatious filings by pro se litigants," and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law[]" . . . .

Id. (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that when [a] plaintiff proceeds pro se, . . . a court is obligated to construe his pleadings liberally.") (citations and internal quotation marks omitted).

11

## B. Eighth Amendment

"The Eighth Amendment prohibits the infliction of 'cruel and unusual punishments' on those convicted of crimes, which includes punishments that 'involve the unnecessary and wanton infliction of pain.'" Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994) (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)). "In order to establish an Eighth Amendment violation arising out of inadequate medical care, a prisoner must prove deliberate indifference to [his] serious medical needs." Greathouse v. Meddaugh, 632 F. Supp. 3d 3, 18 (N.D.N.Y. 2022) (alteration in original) (quotation marks omitted) (quoting Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998)). "The standard for deliberate indifference includes a subjective component and an objective component." Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011).

The objective component requires a plaintiff to demonstrate that his alleged medical need is "sufficiently serious." Hathaway, 37 F.3d at 66 (citation omitted). "The objective component involves assessing (a) whether the plaintiff was actually deprived of adequate medical care (i.e., whether the care provided was reasonable), and (b) if so, whether the inadequacy in that care was sufficiently serious." H'Shaka v. O'Gorman, 444 F. Supp. 3d 355, 385 (N.D.N.Y. 2020) (citation omitted); see also Salahuddin v. Goord, 467 F.3d 263, 279-80 (2d Cir. 2006). "[I]f the Court finds that the plaintiff was completely deprived of treatment, it should examine whether the plaintiff's medical condition is sufficiently serious (i.e., a condition of urgency that may result in degeneration or extreme pain)[.]" H'Shaka, 444 F. Supp. 3d at 385. If the Court finds that "treatment was provided, it should assess the circumstances of the treatment rather than the severity of the underlying medical condition." Id. at 385-86 (citation omitted);

see Salahuddin, 467 F.3d at 280 (quoting Smith v. Carpenter, 316 F.3d 178, 185 (2d Cir. 2003)) ("In cases where the inadequacy is in the medical treatment given, the seriousness inquiry is narrower. . . .  [T]he seriousness inquiry 'focus[es] on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone.'").

"'Because society does not expect that prisoners will have unqualified access to health care,' a prisoner must [make a] showing of serious illness or injury in order to state an Eighth Amendment claim for denial of medical care." Smith, 316 F.3d at 184 (quoting Hudson v. McMillian, 503 U.S. 1, 9 (1992)).  "[O]nly minor injuries . . . are not sufficiently serious to state a deliberate indifference claim under the Eighth Amendment." Lewis v. Havernack, No. 9:12-CV-0031 (GLS/DEP), 2013 WL 1294606, at *9 (N.D.N.Y. Mar. 28, 2013) (collecting cases), report-recommendation and order adopted, 2013 WL 1294592 (N.D.N.Y. Mar. 28, 2013).  An illness or injury is "sufficiently serious" when it presents "a condition of urgency, one that may produce death, degeneration or extreme pain. . . ." Hill, 657 F.3d at 122 (citation omitted).  The Second Circuit has identified several factors relevant to the inquiry, including "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the condition significantly affects daily activities, and (3) 'the existence of chronic and substantial pain.'" Brock v. Wright, 315 F.3d 158, 162 (2d Cir. 2003) (quoting Chance, 143 F.3d at 702).

The subjective component requires a showing that the defendant has acted with a "sufficiently culpable state of mind." Hathaway, 37 F.3d at 66.  To constitute a sufficiently culpable state of mind the defendant must "know[] of and disregard[] an

excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). "Deliberate indifference is a mental state equivalent of subjective recklessness" and it "requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." Salahuddin, 467 F.3d at 280. "Issues of medical judgment cannot be the basis of a deliberate indifference claim where evidence of deliberate indifference is lacking." Hill, 657 F.3d at 123.

### 1. Injuries Not Contained in Medical Reports

Plaintiff alleged and/or testified that he suffered a sprained thumb and wrist, facial lacerations and swelling, black and blue eyes, a head injury, bruises and lacerations to his upper and lower body, and a right shoulder injury. Compl. at 20; see also Dkt. No. 69-3 at 62, lines 4-6, 21-24; 63, lines 6-10; 64, lines 2-13, 16-20; 71, lines 13-20; 83, lines 13-14. Plaintiff also alleged that he was "explicitly denied" and "intentionally denied" medical care. Compl. at 18-19. Plaintiff's allegations are directly contradicted by the medical records which document only a wrist laceration and red eyes and indicate that he was examined fifteen minutes after the use of force incident and in the following days. See Dkt. No. 69-3 at 6; Dkt. No. 69-2 at 5-7, 9. Plaintiff alleged and testified that Brown's August 31 injury report was falsified, and that photos and videos were taken when he was examined which would corroborate his greater injuries. See Compl. at 20; Dkt. No. 69-3 at 58, lines 7-9; 68, lines 13-19; 79, lines 8-10. No photos or videos have been provided to the Court.

Brown does not address plaintiff's allegations and testimony of greater injuries, his contention that the medical report was falsified, or his allegations and testimony that there were photos and a video from the examination. See Dkt. No. 69-4 at 5-10. Brown relies entirely on the medical reports which document only the wrist laceration and burning eyes. See id. at 5-10. It is concerning that Brown says nothing of the assertion that photos and videos were taken of plaintiff's injuries because if such photos existed, they could likely corroborate one party's assertion—either that plaintiff had only red eyes and a wrist laceration, or that he was bruised and cut on his head, face, and body. See id. at 5-10; see also Compl. at 18; Dkt. No. 69-3 at 58, lines 7-9; 68, lines 13-19; 79, lines 8-10.[8]

Regardless, based on the record before the Court, plaintiff's allegations, which are made in a verified complaint, and his testimony, which was made under oath, are not so outrageous or implausible that no reasonable juror could believe him. See Compl. at 26; Dkt. No. 69-3 at 16, line 3; see also Jackson, 549 F. Supp. 2d at 210; Berkley, 2018 WL 3736791, at *3.

Plaintiff alleges and testifies that he was repeatedly punched and kicked in his head, face, ribs, torso, and back. See Compl. at 16-18; see also Dkt. No. 69-3 at 34, lines 9-16; 36, lines 17-20; 38, lines 7-10; 41, lines 17-25; 45, lines 2-5; 47, lines 9-18. He contends that he was forced to the ground and dragged down the stairs. See id. at Compl. at 17-18; see also Dkt. No. 69-3 at 40, lines 6-7. His complaint and testimony

---

[8] Following a discovery hearing on March 30, 2022, defendants were "directed to make any additional effort to verify if a video tape or recording . . . exists." Text Minute Entry 03/30/2022. On May 16, 2022, plaintiff wrote a letter to the Court stating that the Attorney General's Office told him there was no video "only photographs." Dkt. No. 53 at 1. He contends that a sergeant confirmed in a disciplinary hearing on September 16, 2020, that a video was taken. See id. at 2. Plaintiff did not attach disciplinary hearing minutes or a transcript to his letter. See id.

are consistent with each other and support greater injuries to his head, face, and body than just red eyes and a wrist laceration. See Moore v. Casselberry, 584 F. Supp. 2d 580, 587 (W.D.N.Y. 2008) ("[A]lthough the credibility of [the] plaintiff's testimony concerning the alleged assault is certainly inconsistent with other evidence and is subject to serious question, it is not so blatantly false that the Court may simply reject it as a matter of law."). To be sure, plaintiff did name an additional injury during his deposition that he did not allege in his complaint—the shoulder injury. See Compl. at 20; see also Dkt. No. 69-3 at 63, lines 6-10. This does not, standing alone, mean that summary judgment must be granted. See Morehouse v. Vasquez, No. 17-CV-4836 (KMK), 2020 WL 1049943, at *13 (S.D.N.Y. Mar. 4, 2020) (citation omitted) (collecting cases) (concluding that although the plaintiff first mentioned an ankle injury in his deposition, it "does not render his testimony 'so incredible,' particularly when in comparison to cases where summary judgment has been granted on such grounds."); Latouche v. Tompkins, No. 9:09-CV-308 (NAM/RFT), 2011 WL 1103022, at *8 (N.D.N.Y. Mar. 4, 2011) (noting that insofar as the plaintiff's complaint and declaration are inconsistent, any discrepancy goes to the weight of the plaintiff's testimony), report and recommendation adopted, 2011 WL 1103045 (N.D.N.Y. Mar. 23, 2011).[9]

However, courts have granted summary judgment where a plaintiff's allegations are entirely unsupported by the medical records. See Henry v. Brown, 406 F. Supp. 3d 211, 215 (E.D.N.Y. 2016) (granting summary judgment where the plaintiff alleged that

---

[9] It is noteworthy that plaintiff sent a letter to the Court on December 19, 2021, in which he alleged he was subjected to excessive force during an arrest by the Syracuse Police Department and he suffered an injury to his right shoulder. See Dkt. No. 40. Plaintiff first mentioned suffering a shoulder injury from the use of force incident with Rastani and Burke during his February 3, 2022, deposition. See Dkt. No. 69-3 at 63, lines 2-25; 64, lines 2-13.

he suffered a head injury which caused him to be "unconscious lying in a pool of blood for approximately one hour and fifteen minutes," but the "[p]laintiff offers nothing more than his own bare assertions to support these claims, and hospital records from the date of the alleged incident tell a different story.  According to his medical records, [the p]laintiff did not present with any head injury whatsoever."); Allah v. Wilson, No. 13-CV-4269, 2017 WL 4350611, at *4 (S.D.N.Y. July 31, 2017) (citations omitted) (granting summary judgment where the "[p]laintiff's conclusory allegations are completely at odds with the record evidence.  [The p]laintiff here swears that he was punched repeatedly by more than five officers, suffered lacerations and bruises, and that he experienced pain for two to three weeks, but his medical records note that [the p]laintiff reported no pain and that 'patient appeal[ed] [sic] well, in no apparent distress.'"); Murray v. City of New York, No. 18-CV-6978 (AT), 2020 WL 3871456, at *4 (S.D.N.Y. July 9, 2020) ("[T]he contemporaneous medical records directly contradict [the p]laintiff's allegations of severe injuries.  Based on the uncontroverted record, the Court concludes that no reasonable juror would credit [the p]laintiff's version of events."); Dallio v. Santamore, No. 9:06-CV-1154, 2010 WL 125774, at *11-12 (N.D.N.Y. Jan. 7, 2010) (granting summary judgment because "in the following ten days, [the plaintiff] was seen by the medical staff on eight of those days.  Thus, despite [the plaintiff's] conclusory allegations of a failure to provide medical treatment, the record demonstrates that medical staff treated [the plaintiff] on a near-daily basis. . . .  [The plaintiff's] contentions that he had injured his eye are not supported by any objective medical evidence.  While it is undisputed that [the plaintiff] suffered from a reddened eye, the cause and timing of the irritation is immaterial to this claim, for medical staff noted and evaluated the

condition and determined that it was not an emergency."); cf. Abreu v. Farley, No. 6:11-CV-06251 (EAW), 2019 WL 1230778, at *17 (W.D.N.Y. Mar. 15, 2019) (citations and quotation marks omitted) ("The Court recognizes that there is authority supporting the proposition that where undisputed medical records directly and irrefutably contradict a plaintiff's descriptions of his injuries attributed to an alleged use of excessive force, no reasonable jury could credit [the] plaintiff's account of the happening.").

The Court need not resolve whether there is enough evidence to create a dispute of material fact as to plaintiff suffering additional injuries not reflected in the medical reports, because even assuming that he did, none of the injuries constitute a serious medical need. See Hudson, 503 U.S. at 9 (citation omitted) ("Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'").

As to plaintiff's alleged bruises, abrasions, and black eyes, it is well settled that these injuries are minor do not constitute serious medical needs. See White v. Rock, No. 9:13-CV-392 (GTS/CFH), 2016 WL 11478222, at *10 (N.D.N.Y. Feb. 23, 2016) (citation omitted) ("Courts in this Circuit, including within this District, have consistently held that 'cuts, lacerations, bruises, and other superficial injuries,' are not 'sufficiently serious to support' a deliberate indifference claim."), report-recommendation and order adopted, 2016 WL 1248904 (N.D.N.Y. Mar. 29, 2016); Lewis, 2013 WL 1294606, at *9 (collecting cases) (second alteration in original) (concluding "injuries to [the plaintiff's] 'upper facial cheek and lower eyelid, as well as [his] left upper cheek' were not sufficiently serious); McDay v. Bushey, No. 9:14-CV-997 (GLS/ATB), 2016 WL

6638182, at *6 (N.D.N.Y. Aug. 10, 2016) (collecting cases) (explaining that scratches, bruises, swelling, and cuts are the "types of minor, temporary injuries [that] have been held not to constitute serious medical needs as a matter of law."), report-recommendation adopted, 2016 WL 6637969 (N.D.N.Y. Nov. 9, 2016); Bradley v. Rell, 703 F. Supp. 2d. 109, 121-22 (N.D.N.Y. 2010) (concluding that "a headache and blurry vision; [] swelling and bruising around his head; and [] an abrasion to his right lower leg from the dog bite[]" were not serious medical needs); Latouche, 2011 WL 1103022, at *14 (determining that "without more," "several bruises and cuts on [the plaintiff's] face" were not sufficiently).

As to plaintiff's alleged sprained right thumb and left wrist, courts have concluded that a sprain, in combination with other injuries and individually, is not a serious medical need.  See Chatin v. Artuz, 28 F. App'x 9, 10 (2d Cir. 2001) (summary order) ("[A] sprained ankle, a bone spur, and a neuroma, did not rise to the level of seriousness that the Eighth Amendment requires."); Doumin v. Carey, No. 6:06-CV-1119 (NPM/DEP), 2008 WL 4241075, at *6 (N.D.N.Y. Sept. 12, 2008) (collecting cases to support determination that a sprained ankle was not a serious medical need); Davis v. Reilly, 324 F. Supp. 2d 361, 368 (E.D.N.Y. 2004) ("[A] sprained back and neck coupled with pain in the left testicle, do not constitute a serious medical condition."); cf. Paterson v. Goord, No. 9:06-CV-211, 2008 WL 623123, at *8 (N.D.N.Y. Mar. 4, 2008) (footnote omitted) (collecting cases which have concluded that a broken finger does not constitute a serious injury and concluding that "if a *broken* finger does not constitute a serious medical need, it is difficult for [the Court to discern] how an *unbroken* finger. . . can

constitute a serious medical need."), report-recommendation and order adopted, 2006 WL 1555588 (N.D.N.Y. June 6, 2006).

Importantly, plaintiff does not allege, nor is there evidence, that the alleged sprains caused him extreme pain or resulted in any sort of degeneration or limits on his activities of daily living. See Woods v. Town of Cheektowaga, No. 11-CV-343, 2012 WL 5288767, at *6 (W.D.N.Y. Oct. 23, 2012) (concluding that the plaintiff's diagnosis of a "sprained wrist and sacrum-coccyx contusion" cannot be considered a serious medical need because the plaintiff "complained generically of pain, without elaboration as to the severity, and of 'not feeling well at all[]'"; thus, "[t]here is [] no evidence from which a jury could conclude that [the plaintiff] was suffering from a medical condition that could have produced death, degeneration or extreme pain.");[10] Miles v. Cnty. of Broome, No. 3:04-CV-1147 (TJM), 2006 WL 561247, at *7 (N.D.N.Y. Mar. 6, 2006) (holding that although the "plaintiff did suffer some trauma to his wrists[,]" there is no evidence that the injury was likely to cause death or degeneration, and there is "no medical evidence in the record that [the] plaintiff's wrists did not heal completely or properly.").

Although plaintiff alleged in his complaint that he suffered "a sprained right thumb and sprained left wrist," he did not testify to those injuries. Compl. at 20. He also did not allege or testify that he informed Brown about the supposed sprains or pain in his left wrist and right thumb during the examination. See generally Compl. Plaintiff was examined multiple times by various medical staff care in the days after the assault, and

---

[10] Woods concerns a pretrial detainee's Fourteenth Amendment deliberate medical indifference claim. See 2012 WL 5288767, at *1-2. However,"[a] pre-trial detainee's claim for deliberate medical indifference is analyzed using a two-pronged standard drawn from Eighth Amendment principles and modified, as appropriate, to recognize the fact that a pre-trial detainee is entitled to slightly greater protection under the Fourteenth Amendment." Carter v. Broome Cnty., 394 F. Supp. 3d 228, 240 (N.D.N.Y. 2019). The objective prong is the same under either Amendment. See Darnell v. Pineiro, 849 F.3d 17, 30 (2d Cir. 2017).

he did not complain about pain or limited activities of daily living because of the alleged sprains. See Dkt. No. 69-3 at 6; see also Ridge v. Davis, No. 18-CV-8958 (JCM), 2022 WL 357020, at *15 (S.D.N.Y. Feb. 7, 2022) (collecting cases) (citations omitted) ("[The p]laintiff's first examination – which he initially refused – did not indicate any pain or medical conditions beyond scratches, 'mild' blurred vision, and a broken blood vessel. Courts have consistently rejected deliberate indifference claims under similar circumstances, involving relatively brief delays or interruptions in treatment and a dearth of evidence that the plaintiff's pain or medical condition worsened as a result."); Brock, 315 F.3d at 162 (noting that the Court is to consider "whether a reasonable medical doctor would find the condition important and worthy of comment or treatment; the impact the condition has on activities of daily living; and the existence of chronic and substantial pain."). As there is no evidence that the alleged right thumb or left wrist sprains resulted in extreme pain or degeneration, they are not serious medical needs.

    As to plaintiff's "head injury," he mentions it once in his complaint. Compl. at 20. Plaintiff testified that he was "bleeding on [his] head, bleeding on [his] eyes. Back of [his head." Dkt. No. 69-3 at 61, lines 18-19. Once the pepper spray was washed from his face, he realized "it wasn't like blood dripping down . . . . [He]had about two small scars . . . on [his] eyebrows . . . they were like[,] wasn't [sic] bleeding profusely." Id. at 71, lines 15-20. Two small cuts or an unspecified head injury are not sufficiently serious medical conditions. See Havernack, 2013 WL 1294606 at *9; McDay, 2016 WL 6638182, at *6-7; Johnson v. Woods, No. 07-CV-1018 (DNH/DRH), 2010 WL 2039164, at *12 (N.D.N.Y. Mar. 2, 2010) (concluding that a "broken finger and alleged head injury are insufficient to satisfy the objective prong of the analysis."), report-recommendation

and order adopted, 2010 WL 2039019 (N.D.N.Y. May 21, 2010).  There is no evidence that plaintiff ever complained about the head injury during his four medical visits.  See Ridge, 2022 WL 357020, at *15.  Without any evidence of severe pain from his alleged head injury or evidence showing that he suffered anything more than a few small cuts on his head, the injury does not constitute a serious medical need.  See Green v. Shaw, No. 3:17-CV-00913 (CSH), 2019 WL 1427448, at *6 (D. Conn. Mar. 29, 2019) ("While [the p]laintiff reported experiencing some pain, the record does not indicate that it was 'chronic and substantial' or significantly affected [the p]laintiffs' daily activities—quite the opposite, [the p]laintiff did not complain of his symptoms again until more than a year after his appointment with [the d]efendant . . . .") aff'd, 827 F. App'x 95 (2d Cir. 2020) (summary order).

Plaintiff testified that he "think[s] . . . [his] shoulder . . . was messed up" but he does not "really know the exact name" of the shoulder injury.  Dkt. No. 69-3 at 63, lines 6-15.  Plaintiff believes that he suffered "torn ligaments" or "cartilage damage" in his right shoulder.  Id. at 63, lines 9-10.  He did not allege a shoulder injury in his complaint. See generally Compl.  Under similar facts, this Court has concluded that a plaintiff failed to raise a triable issue of fact because the alleged shoulder injury was entirely unsupported by the record.  See Douglas v. Smith, No. 9:05-CV-1000 (LEK/DRH), 2008 WL 434605, at *8 (N.D.N.Y. Feb. 14, 2008) (determining that the plaintiff's "claims with respect to his shoulder are conclusory, unsubstantiated, and undocumented[,]" they were only mentioned in the plaintiff's deposition, and "therefore, [the plaintiff] failed to offer sufficient evidence to raise a question of fact as to his claimed shoulder injury.")

Assuming that plaintiff did suffer a shoulder injury from the August 31, 2020, incident, the extent of the injury as indicated in the record does not evidence a serious medical need. Courts have concluded that torn ligaments and shoulder injuries are not serious medical needs. See Williamson v. Goord, No. 02-CV-521 (GLS/GHL), 2006 WL 1977438, at *14, 16 (N.D.N.Y. July 11, 2006) (determining that a partially torn anterior cruciate ligament, ankle pain, nausea, and dizziness were not serious medical needs because they did not cause death, degeneration or extreme pain); Taylor v. Kurtz, No. 00-CV-700, 2004 WL 2414847, at *4 (W.D.N.Y. Oct. 28, 2004) (citation omitted) (determining that a torn ACL was not sufficiently serious because it was not a "condition of urgency, one that may produce death, degeneration or extreme pain."); Patterson v. Westchester Cnty., No. 13-CV-0194 (PAC/AJP), 2014 WL 1407709, at *7 (S.D.N.Y. Apr. 11, 2014) ("[T]orn ankle ligaments do not constitute the type of serious medical need required to state a § 1983 Eighth Amendment deliberate indifference claim."), report and recommendation adopted, 2014 WL 2759072 (S.D.N.Y. June 16, 2014).

Although, generally, a plaintiff's complaints of pain without more are insufficient to establish a serious medical need, "[s]evere pain requiring high doses of pain medication can be a serious medical need in and of itself." Neary v. Naqvi, No. 3:14-CV-001631 (VLB), 2017 WL 3205471, at *11 (D. Conn. July 27, 2017); see Scalpi v. Town of E. Fishkill, No. 14-CV-2126 (KMK), 2016 WL 858916, at *10 (S.D.N.Y. Feb. 29, 2016) (citation omitted) ("[T]hough she alleges 'extreme pain far measured above discomfort,' 'subjective complaints of pain are not, in and of themselves, sufficient to establish the existence of a serious medical need[.]'"); Guarneri v. Hazzard, No. 9:06-CV-985 (NAM/DRH), 2010 WL 1064330, at *15 (N.D.N.Y. Mar. 22, 2010) (citation

omitted) ("Back pain does not constitute a serious medical need where despite being seen frequently by prison medical officials, [the] plaintiff 'did not voice a significant number of concerns regarding pain, nor did he request pain medication beyond simple Ibuprofen and similar over-the-counter medications.'"); Douglas, 2008 WL 434605, at *8.

Additionally, if there is evidence of continuous immobility or impacts on activities of daily living, or surgical intervention, there may be disputes of material fact as to whether an injury constitutes a serious medical need.  See Sereika v. Patel, 411 F. Supp. 2d 397, 406 (S.D.N.Y. 2006) (citations omitted) (denying summary judgment where the plaintiff alleged "that following his shoulder injury, he experienced 'great discomfort and pain.'  [The plaintiff] also asserts that the alleged [eighteen-day] delay in treatment exacerbated his injury and that as a result of the delay and inadequacy of treatment, he 'lost a great deal of mobility in his right arm and shoulder.'"); Guarneri v. Bates, No. 905-CV-444 (GLS/DRH), 2008 WL 686809, at *5 (N.D.N.Y. Mar. 10, 2008) (concluding that "there appears to be sufficient issues of material fact concerning the actual pain and severity of the alleged shoulder injury" because the plaintiff "contends that his alleged rotator cuff tear left him in severe pain and that he could not move his arm[]" but the injury was not documented in the medical records until five months after the date of injury.  "Any reasonable person or physician would agree that a rotator cuff tear which prohibits arm movement is worthy of medical treatment."); Mercer v. APS Healthcare, Inc., No. 9:13-CV-0840 (DNH/RFT), 2015 WL 5692563, at *9 (N.D.N.Y. Sept. 28, 2015) ("[The p]laintiff suffered from chronic pain in both shoulders and had difficulty moving his right shoulder.  Moreover, [the p]laintiff's shoulder pain was

24

sufficiently serious to warrant, inter alia, physical therapy, x-ray of shoulder joint, pain killers, a physiatrist, shoulder injections, and, on numerous occasions, his primary physician recommending that he visit with an orthopedic physician."), aff'd, 669 F. App'x 9 (2d Cir. 2016) (summary order); Vail v. Lashway, No. 9:12-CV-1245 (GTS/RFT), 2014 WL 4626490, at *12 (N.D.N.Y. Sept. 15, 2014) (citation omitted) ("[The p]laintiff's shoulder injury was sufficiently serious enough to warrant, inter alia, an MRI and x-ray, visits with specialists, PT, pain killers, and multiple surgeries.").

Here, plaintiff testified that when he was examined by Brown, he told Brown "where it hurt at.  [His] shoulder."  Dkt. No. 69-3 at 66, lines 18-21.  Right after the assault he could not "really move [his] shoulder[,]" Dkt. No. 69-3 at 63, lines 7-8. Despite this testimony, plaintiff did not allege a shoulder injury, numbness, or immobility in his complaint.  See Compl. at 20.  Plaintiff did not testify that the pain or inability to move his shoulder lasted beyond the August 31, 2020, examination.  There is nothing the record to indicate that he ever again complained about his shoulder or sought medical attention for it—despite being seen by various medical providers for the two days following the incident.  See Dkt. No. 69-2 at 5-7, 9; Dkt. No. 69-3 at 6.  On this record, no rational fact finder could conclude that plaintiff's shoulder was a serious medical need because there is no evidence of ongoing extreme or severe pain, the use of pain killers, or continued immobility or limited movement.

Based on the foregoing, plaintiff has failed to raise a triable issue of fact as to whether Brown was deliberately indifferent to the injuries that are not reflected in the medical records—sprains, a shoulder injury, a head injury, lacerations, and bruises—

because they do not constitute serious medical needs. Compl. at 20. Thus, as to these injuries, it is recommended that summary judgment be granted.

### 2. Injuries Supported by Medical Records

The only injuries that the medical records support are a wrist laceration and red eyes. See Dkt. No. 69-2 at 5-7, 9; Dkt. No. 69-3 at 6. Multiple providers, who are not party to this action, confirmed that those were plaintiff's only injuries. See Dkt. No. 69-2 at 5-6, 9; Dkt. No. 69-3 at 6.

### a. Wrist Laceration

Plaintiff has failed to raise a triable issue of fact as to his wrist laceration. First, it is well settled that a wrist laceration is not a serious medical need. See supra at 18-19; see also Dallio v. Hebert, 678 F. Supp. 2d 35, 44-45 (N.D.N.Y. 2009) (collecting cases to support contention that cuts and bruises did not constitute serious medical needs); Grays v. McGrain, 333 F. Supp. 3d 225, 232 (W.D.N.Y. 2018) (citation omitted) (collecting cases) ("Courts in this Circuit have consistently held that cuts, lacerations, bruises, and other superficial injuries . . . are not sufficiently serious to support a deliberate indifference claim."); White, 2016 WL 11478222, at *10 (stating the same).

Second, there is no dispute that Brown's care was adequate. Brown declared that plaintiff's wrist abrasion was a closed wound with no active bleeding, and treatment was not necessary. See Dkt. No. 69-2 at 2, ¶ 14. Plaintiff does not allege or testify otherwise. See generally Compl. Brown's medical records do not indicate that he put bacitracin on plaintiff's wrist wound. See Dkt. No. 69-2 at 2, ¶ 14; 7. Plaintiff testified that it might have been Brown who applied bacitracin to the wound, but that he was not sure. See Dkt. No. 69-3 at 67, lines 22-23; 69, lines 20-24; 70, lines 2-8. There is no

record evidence upon which a rational fact finder could rely to conclude that Brown was deliberately indifferent to plaintiff's wrist laceration as it was a minor injury, and plaintiff received treatment with bacitracin.  See Dallio, 678 F. Supp. 2d at 62 ("[T]he evidence shows that [the d]efendants . . . responded to [the p]laintiff's requests for medical attention, examined him, and provided medication for his pain.  This is insufficient to raise a genuine issue of material fact that these defendants were deliberately indifferent."); Latouche, 2011 WL 1103022, at *14 ("[H]is Eighth Amendment claim against [the d]efendant [] would nevertheless fail because nothing in the record supports the notion that [the d]efendant [] was deliberately indifferent to [the p]laintiff's injuries. [The d]efendant [] cleaned and disinfected [the p]laintiff's injuries with peroxide, saline, and an antibiotic ointment.").  Thus, summary judgment is warranted as to plaintiff's wrist laceration.

**b.  Pepper Spray**

The undersigned cannot so easily conclude whether summary judgment is warranted as to the injuries plaintiff suffered from being pepper sprayed.  A majority of courts have concluded that the effects of pepper spray are temporary and do not to constitute a serious medical need.  See Blond v. City of Schenectady, No. 10-CV-0598 (TJM), 2010 WL 4316810, at *5 (N.D.N.Y. Oct. 26, 2010) (quoting Strassner v. O'Flynn, No. 04-CV-6021 (CJS), 2006 WL 839411, at *8 (W.D.N.Y. Mar. 27, 2006) (concluding that exposure to temporary discomfort of pepper spray is not a serious medical need)); Wright v. Trapasso, No. 15-CV-4428 (MKB), 2018 WL 4688940, at *11 (E.D.N.Y. Sept. 28, 2018) (stating that the "plaintiff's 'incredible discomfort' as a result of the pepper spray does not rise to the level of seriousness required for a constitutional violation.");

Sitts v. Simonds, No. 9:20-CV-1475 (TJM/ML), 2022 WL 2670213, at *11, n.20 (N.D.N.Y. May 11, 2022) (collecting cases) ("The Court also notes that courts in this circuit have held that 'temporary discomfort caused by pepper spray or mace does not constitute a 'sufficiently serious' injury within the meaning of deliberate indifference.'"), report and recommendation adopted, 2022 WL 2666909 (N.D.N.Y. July 11, 2022); Jones v. Wagner, No. 3:20-CV-00475 (VAB), 2022 WL 1525134, at *10 (D. Conn. May 13, 2022) (collecting cases) ("The residual effects of a chemical agent generally do not, without more, constitute a serious medical need."); Taylor v. Quayyum, No. 1:16-CV-1143 (GHW), 2021 WL 6065743, at *6 (S.D.N.Y. Dec. 21, 2021) (citations omitted) ("The p]laintiff does not, however, allege an injury that is sufficiently serious to state a claim for deliberate indifference to medical needs.  [The p]laintiff's alleged injuries include 'rest[r]icted breathing, caoughing [sic], sneezing, burning of eyes and throat, skin irritation [and] mental anguish.'  '[T]he temporary discomfort caused by pepper spray . . . does not constitute a sufficiently serious [objective] injury.'"); Ross v. Willis, No. 16-CV-6704 (PAE/KNF), 2021 WL 3500163, at *19 (S.D.N.Y. Aug. 9, 2021) (dismissing medical indifference claim because "[i]t is clear that being pepper sprayed in the face caused [the plaintiff] great deal discomfort and pain. . . .  Had the officers thereafter denied [the plaintiff] adequate care in response to these exhibited symptoms, or deployed the agent after [the plaintiff] began to manifest them, [the plaintiff] would have a viable basis to claim that [the defendant's] spraying occurred in the face of a known sufficiently serious condition.  But [the plaintiff] does not point to such evidence."); Williams v. City of New York Dep't of Correction, No. 19-CV-9528 (ER), 2020 WL 3893929, at *4 (S.D.N.Y. July 10, 2020) (granting motion to dismiss where the

28

plaintiff alleged that "[a]fter exposure to pepper spray, he [was] having issues breathing and that he was choking and banging on the cell door for at least 45 minutes, ultimately having to use the toilet bowl to clear his airways.").

In other courts, "[t]he effects of being sprayed with a chemical agent have been considered sufficiently serious to constitute a serious medical need." Jones v. Wagner, No. 3:20-CV-475 (VAB), 2020 WL 4272002, at *6 (D. Conn. July 24, 2020) (citing Deegan v. Doe #1, No. 3:19-CV-1356 (MPS), 2019 WL 5964816, at *5 (D. Conn. Nov. 13, 2019) (allowing medical indifference claim based on pepper spray effects to proceed past initial review); Parsons v. City of N.Y., No. 17-CV-2707(MKB), 2017 WL 2656135, at *4 (E.D.N.Y. June 19, 2017) (same)); see also West v. City of New York, No. 13-CV-5155 (PAE), 2014 WL 4290813, at *4 (S.D.N.Y. Aug. 28, 2014) (concluding on motion to dismiss that the plaintiff alleged serious medical need where he was sprayed with mace which resulted in "difficulty breathing, severe itching and burning, and skin discoloration").

Summary judgment may be denied if there is "more" than just pain from pepper spray alleged, such as a delay in treatment. Jones, 2022 WL 1525134, at *10; see also Ross, 2021 WL 3500163, at *18. "[A] delay in treatment does not violate the constitution unless it involves an act or failure to act that evinces a conscious disregard of a substantial risk of serious harm." Pabon v. Wright, No. 99-CV-2196 (WHP), 2004 WL 628784, at *8 (S.D.N.Y. Mar. 29, 2004) (alteration in original) (quotation marks omitted) (quoting Thomas v. Nassau County Correctional Ctr., 288 F. Supp. 2d 333, 339 (E.D.N.Y. 2003)), aff'd, 459 F.3d 241 (2d Cir. 2006). "[A] plaintiff must show some measurable harm that resulted from the alleged delay in order to present a triable issue

of fact . . . ." Upson v. Wilson, No. 9:18-CV-1149 (LEK/CFH), 2022 WL 7278551, at *6

(N.D.N.Y. Mar. 11, 2022), report-recommendation and order adopted, 2022 WL

4591874 (N.D.N.Y. Sept. 30, 2022); see also Smith, 316 F.3d at 185 (citation omitted)

("When the basis for a prisoner's Eighth Amendment claim is a temporary delay or

interruption in the provision of otherwise adequate medical treatment, it is appropriate to

focus on the challenged delay or interruption in treatment rather than the prisoner's

underlying medical condition alone in analyzing whether the alleged deprivation is, in

'objective terms, sufficiently serious,' to support an Eighth Amendment claim.").

        This Court has denied summary judgment where a plaintiff was forced to wait

forty-five minutes to "well over an hour" to be decontaminated from pepper spray.  Sitts,

2022 WL 2670213, at *11-12 (denying summary judgement because even "assum[ing]

—without deciding—that no genuine issue of material fact exists regarding the objective

requirement of [the p]laintiff's deliberate indifference to medical care claim[,] . . . an

issue of fact remains for the jury to determine whether [the d]efendant [] was aware, or

should have been aware, that failing to provide a decontamination shower in a timely

fashion would pose a substantial risk to [the p]laintiff's health[]" where there was

evidence that the plaintiff was strapped to a chair for forty-five minutes begging for the

pepper spray to be washed off of his eyes and face); see also Genao v. City of New

York, No. 21-CV-00303 (ATVF), 2023 WL 4633486, at *9 (S.D.N.Y. June 20, 2023)

("[The plaintiff's] asthma, coupled with the fact that he was left in a cell for approximately

15 hours with residual chemical agents in the cell and on his person, after having been

denied a shower and not provided an inhaler, may support a finding by a jury that

Genao suffered from a serious medical need, given his complaints of chest and

stomach pain."), report and recommendation adopted, 2023 WL 4625522 (S.D.N.Y. July 19, 2023); West v. City of New York, No. 13-CV-5155 (PAE), 2014 WL 4290813, at *5 (S.D.N.Y. Aug. 28, 2014) (concluding that the plaintiff stated a claim for deliberate indifference where there was evidence that the defendant "sprayed him with mace," "left him in the shower for approximately two hours" while he was "was coughing and struggling to breathe; his skin was burning; and he may have been suffering complications related to his preexisting heart murmur," and where that defendant "delayed his access to medical care for the sole purpose of extending his suffering.").

"[W]here an inmate repeatedly asks for medical attention and has visible injuries, a reasonable jury could find that a defendant's delay in providing medical care rises to the level of deliberate indifference."  Warren v. City of New York Dep't of Corr. Med. Staff, No. 17-CV-1125 (PKC/LB), 2021 WL 1163105, at *9 (E.D.N.Y. Mar. 26, 2021) (concluding that there were genuine disputes of fact because the plaintiff presented to the medical clinic "with a known history of asthma and symptoms of a severe asthma attack," and although the plaintiff said he felt like "he was 'going to die[,]'" the medical provider "refused to provide any further medical attention [beyond administered a medication and prescribing an antibiotic], leaving [the p]laintiff to exacerbate for hours in a 'holding cell' until another doctor was available to see him."); see also Martinez v. City of New York, 564 F. Supp. 3d 88, 104 (E.D.N.Y. 2021) (denying summary judgment because "[w]hile [the plaintiff] has submitted no evidence that the delay in treatment worsened her injury . . . [t]he record contains evidence from which a factfinder could infer that [she] was left in serious, untreated pain for hours.").

On the other hand, courts have concluded that a short delay in treatment is insufficient to state a deliberate indifference claim. Crouch v. Spaulding, No. 9:16-CV-1435 (DNH/DJS), 2019 WL 1004539, at *3 (N.D.N.Y. Jan. 24, 2019) (alteration in original) (granting summary judgment on medical indifference claim because the plaintiff was seen "n[o] longer than 30 minutes" after being assaulted by other inmates), report and recommendation adopted, 2019 WL 1004357 (N.D.N.Y. Mar. 1, 2019); Boyd v. Copeland, No. 6:18-CV-06302 (EAW), 2022 WL 2533315, at *5 (W.D.N.Y. July 7, 2022) (granting summary judgment where the plaintiff was decontaminated after fifteen to twenty minutes); Ransom v. Banks, No. 1:20-CV-10232 (MKV), 2022 WL 769344, at *6 (S.D.N.Y. Mar. 14, 2022) (granting motion to dismiss because the "[p]laintiff fails to allege with any specificity how long he was denied treatment or whether the delay itself caused or exacerbated any injury. The only injuries [the p]laintiff alleges were chest pain, wheezing, and shortness of breath as a 'result of being sprayed by chemical agents multiple times, not as a result of any delay in providing access to medical care."); Ricks v. O'Hanlon, No. 07-CV-9849 (WHP), 2010 WL 245550, at *8 (S.D.N.Y. Jan. 19, 2010) (concluding under a Fourteenth Amendment claim that "[a]lthough [the plaintiff] claims that he did not receive medical attention for at least two hours following his arrest, documentary evidence shows that emergency personnel were called at the time of his arrest and that an ambulance arrived at the 50th Precinct twenty-four minutes later. Even crediting [the plaintiff's] version of the facts, he received medical treatment from EMS personnel and hospital medical staff within two or three hours of his arrest.");[11] Crispin v. Roach, No. 3:20-CV-1184 (KAD), 2020 WL 6263185, at *5 (D.

---

[11] The subjective deliberate indifference standards are not identical under the Eighth and Fourteenth Amendments. "[I]n the context of a Fourteenth Amendment due process claim, can be shown by

Conn. Oct. 23, 2020) ("The Court concludes that the 'delay,' . . . of less than an hour in treating [the plaintiff's] hand and arm does not plausibly allege that [the plaintiff] suffered from an objectively serious condition or risk of harm."); Grays, 333 F. Supp. 3d at 236 (concluding that the defendant addressed the plaintiff's injuries "with 'sufficient speed'" after treating the plaintiff "several hours later" and collecting cases where plaintiffs were treated within half-an-hour to a few hours and deliberate indifference was not found).

Here, the use of force incident occurred at 2:50pm. See Dkt. No. 69-3 at 4. The ambulatory health record states a time of 3:40pm for plaintiff's initial medical visit, but Brown declares that is when he completed the form. See Dkt. No. 69-2 at 2, ¶¶15-16; 9. Brown crossed off the 3:40pm time he initially wrote on plaintiff's inmate injury report and changed it to 3:05pm. See id. at 7. He declares he "[e]rroneously" wrote the time he completed the paperwork instead of the time of the examination. Id. at 2, ¶ 18. Nurse Gallogy's use of force report addendum indicates that plaintiff was examined at 3:05pm. See id. at 6.

Plaintiff alleged that after being transported to the medical building he "was made to sit for at least 30 minutes to 45 min. with the pepper spray still in [his] eyes and face and hair." Compl. at 18. He testified that the pepper spray was not washed from his face "for like half an hour." Dkt. No. 69-3 at 60, line 9. Specifically, he testified that after the use of force incident, the officers took about six minutes to get him to he van, it took

---

something akin to recklessness, and does not require proof of a malicious or callous state of mind." Charles v. Orange Cnty., 925 F.3d 73, 86 (2d Cir. 2019) (citation omitted). "[A] detainee asserting a Fourteenth Amendment claim for deliberate indifference to his medical needs can allege either that the defendants *knew* that failing to provide the complained of medical treatment would pose a substantial risk to his health or that the defendants *should have known* that failing to provide the omitted medical treatment would pose a substantial risk to the detainee's health." Id. at 87. Under the Eighth Amendment, the defendant must have actually been aware of the substantial risk to the plaintiff's health. See Salahuddin, 467 F.3d at 280-81.

approximately five minutes to transport him from the dorm to the medical building, then when he got to the medical building, he was placed in a chair facing a wall for ten to fifteen minutes. See id. at 58, lines 13-15; 59, lines 21-25; 60, lines 3-4. He was then taken "into another room" for another ten to fifteen minutes, and he was taken to a third room for five to ten minutes. See id. at 58, lines 18-25; 59, lines 2-25. He was seen by medical and was "screaming in pain," he "could bare move and [he] could barely talk. And [he] could barely see." Id. at 59, lines 4-7. Plaintiff's testimony appears consistent with him not having been seen until closer to 3:40pm. Plaintiff testified he was "hurt and [] had the pepper spray on [him] still." Id. at 66, lines 21-22. Despite this, he testified that Brown laughed at him and said his back was fine. See id. at 66, lines 22-25; 67, lines 3-14; 70, lines 11-25. The next day, plaintiff's eyes were swollen shut, they would not open, and they were black and blue. See id. at 61, lines 2-5.

Plaintiff's complaint and testimony are sufficient to raise a dispute as to whether he was seen by medical fifteen minutes or thirty to forty-five minutes after he was pepper sprayed. This is not a case where plaintiff's complaint is the sole source of dispute, and it is inconsistent with his testimony. Rather, plaintiff's allegations are consistent with his testimony and are not wholly unbelievable. See Compl. at 17-19; see also Jeffreys, 426 F.3d at 554 (affirming district court's grant of summary judgment, in part, because it "found nothing in the record to support [the] plaintiff's allegations other than [the] plaintiff's own contradictory and incomplete testimony" and because "even after drawing all inferences in the light most favorable to the plaintiff, . . . no reasonable person could believe [the plaintiff's] testimony."). There is no dispute that plaintiff was pepper sprayed and his eyes were red and irritated. See Dkt. No. 69-2 at

2, ¶ 11; 5-7, 9; Dkt. No. 69-3 at 4.  Some of the records also indicated a 3:40pm time, although Brown changed one to 3:05pm and declared that 3:40pm was when he filled out the paperwork.  See Dkt. No. 69-2 at 2, ¶¶ 15-16, 18; 7, 9.

However, even construing the facts in the light most favorable to plaintiff, that he was waiting in the medical building for approximately thirty to forty-five minutes, screaming for help because of the pain, the undersigned cannot conclude that this raises a dispute of material fact sufficient to deny summary judgment.  Courts have repeatedly concluded that such a delay is insufficient to establish deliberate indifference where there is no evidence that the delay exacerbated the plaintiff's injuries.  See, e.g., Crouch, 2019 WL 1004539, at *3; Boyd, 2022 WL 2533315, at *5; Ransom, 2022 WL 769344, at *5; Crispin, 2020 WL 6263185, at *5; Grays, 333 F. Supp. 3d at 236. Plaintiff does not allege or testify that the delay exacerbated his injuries.  See Ridge, 2022 WL 357020, at *15 (citations omitted) ("[A]lthough there is evidence that Plaintiff was in pain at some point while awaiting treatment, his sporadic complaints as well as ability to hold a conversation during the interview indicate that he was not in the type of 'extreme pain' that may otherwise satisfy the objective prong of the analysis.  Neither [medical provider] noted any pain-related lapses in [the p]laintiff's functioning or complaints of excruciating pain at any of his examinations.").  The cases that have found a dispute of material fact where there is no evidence of an exacerbation of an injury because of delay, did so where the plaintiff was forced to wait hours for treatment, not thirty to forty-five minutes.  See Warren, 2021 WL 1163105, at *9; Martinez, 564 F. Supp. 3d at 104; West, 2014 WL 4290813, at *5.

In <u>Sitts</u>, where the plaintiff was forced to wait forty-five minutes to an hour, the claim was against the correctional officer who strapped the plaintiff to a chair and made him wait before being seen by a medical provider.  <u>See</u> 2022 WL 2670213, at *12. Here, the claim is against Brown and according to plaintiff's complaint and testimony, although Brown laughed at plaintiff and said "no" or "shut up" to plaintiff, he rinsed plaintiff's eyes after seeing him.  <u>See</u> Dkt. No. 69-2 at 2, ¶ 13; Dkt. No. 69-3 at 59, lines 8-15; 60, lines 3-9; 66, lines 9-25; 67, lines 2-25; 70, lines 11-25.  There are no allegations or testimony indicating that Brown was aware that plaintiff was waiting for forty-five minutes as the correctional officers were moving him from room to room, delaying his treatment.  <u>See id.</u> at Dkt. No. 69-3 at 59, lines 8-15; 60, lines 3-9; 66, lines 9-25; 67, lines 2-25; 70, lines 11-25.

Insofar as plaintiff alleges that he attempted suicide, <u>see</u> Compl. at 21, this Court has denied summary judgment where it found "that a reasonable jury could infer, if they chose to credit [the p]laintiff's testimony, that [the defendant] was subjectively aware of[the p]laintiff's injury and, rather than treating that injury, consciously disregarded it and failed to treat it, and instead walked away." <u>Diaz v. Smith</u>, No. 9:19-CV-1438 (LEK/TWD), 2022 WL 3593379, at *7 (N.D.N.Y. Aug. 23, 2022).  There, the plaintiff alleged that he told a nurse about the "nick size hole over [his] eye[,]" but she walked away from him without examining it or providing care.  <u>Id.</u>  The Court concluded that there was a dispute of material fact about whether plaintiff had the injury and whether the defendant was deliberately indifferent, "especially because this denial ultimately led to [the p]laintiff's attempted suicide."  <u>Id.</u>  Here, plaintiff alleges that he "was so distraught and distressed that due to the treatment [he had] been receiving by the

employees of the D.O.C.C.S. . . . [he] attempted suicide[.]"  Compl. at 21.  He stated

that he "was so scared and driven to suicide because no one was supervising the

actions of these correctional officers against me in S.H.U."  Id.  Plaintiff does not directly

state that Brown's conduct led him to attempt suicide; however, assuming Brown's

conduct was one cause of plaintiff's attempted suicide, Brown treated plaintiff at most

forty-five minutes after plaintiff was pepper sprayed.  See Compl. at 19, 21; see also

Dkt. No. 69-3 at 67, lines 20-21; 70, lines 14-15; Dkt. No. 69-2 at 6-7.  The delay and

ridicule plaintiff endured are insufficient to raise a dispute of material fact because

Brown rinsed the pepper spray from plaintiff's eyes with "sufficient speed."  Grays, 333

F. Supp. 3d at 236.  No reasonable juror could conclude that Brown was aware of and

disregarded a substantial risk to plaintiff's health where Brown rinsed plaintiff's eyes

soon after examining him.  This conclusion is in line with the courts that have concluded

that a relatively short delay is insufficient to amount to deliberate indifference and that

the effects of pepper spray are not a serious medical need.  Grays, 333 F. Supp. 3d at

236; see also Blond, 2010 WL 4316810 at *5; Wright, 2018 WL 4688940, at *11; Taylor,

2021 WL 6065743, at *6; Crouch, 2019 WL 1004539, at *3; Ricks, 2010 WL 245550, at

*8; Crispin, 2020 WL 6263185, at *5.  Based on the foregoing, it is recommended that

Brown's motion be granted.

### 3. Qualified Immunity

In the alternative, Brown argues that his motion for partial summary judgment

should be granted on qualified immunity grounds.  See Dkt. No. 69-4 at 9-10.  "Qualified

immunity shields government officials from civil damages liability unless the official

violated a statutory or constitutional right that was clearly established at the time of the

challenged conduct." Brown v. City of New York, 862 F.3d 182, 190 (2d Cir. 2017)

(quoting Reichle v. Howards, 566 U.S. 658 (2012)).  "[Q]ualified immunity shields

federal and state officials from money damages unless a plaintiff . . . show[s] (1) that the

official violated a statutory or constitutional right, and (2) that the right was 'clearly

established' at the time of the challenged conduct." Vega v. Semple, 963 F.3d 259, 273

(2d Cir. 2020) (footnote omitted).  The Supreme Court has cautioned that "lower courts

'should think hard, and then think hard again,' before addressing both qualified immunity

and the merits of an underlying constitutional claim." District of Columbia v. Wesby, 138

S. Ct. 577, 589 n.7 (2018) (quoting Camreta v. Greene, 563 U.S. 692, 707 (2011)).

     The Court need not address Brown's alternative argument of qualified immunity

as the undersigned recommends granting his motion on the merits.  See Warren v.

Corcoran, No. 9:09-CV-1146 (DNH/ATB), 2011 WL 5599587, at *8 (N.D.N.Y. Oct. 20,

2011) ("This court need not address qualified immunity with respect to [the] plaintiff's

various causes of action because ... he has not established any alleged violations of his

constitutional rights."), report-recommendation and order adopted, 2011 WL 5599620

(N.D.N.Y. Nov. 17, 2011); Atkinson v. Huntington, No. 9:15-CV-0065 (MAD/TWD), 2016

WL 8735651, at *10, n.15 (N.D.N.Y. Aug. 19, 2016) ("In light of my recommendations

that [the d]efendants' motion be granted in its entirety based on the merits, I find it

unnecessary to address [the d]efendants' alternative qualified immunity arguments."),

report- recommendation and order adopted, 2016 WL 4991616 (N.D.N.Y. Sept. 19,

2016).

### III. Conclusion

**WHEREFORE**, based on the findings set forth above, it is hereby:

**RECOMMENDED**, that Brown's motion for partial summary judgment (Dkt. No. 69) be **GRANTED**; it is further

**RECOMMENDED**, that plaintiff's Eighth Amendment claim against Brown be **DISMISSED with prejudice**, and it is

**ORDERED**, that copies of this Report-Recommendation and Order be served on the parties in accordance with the Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED R. CIV. P. 6(a), 6(e), 72.[12]

**IT IS SO ORDERED.**

Dated:  August 10, 2023
      Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

---

[12] If you are proceeding *pro se* and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date of the Report-Recommendation and Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. See id. § 6(a)(1)(C).